Thomas D. Fama (State Bar No. 261477)
tfama@wshblaw.com
Michael G Kline (State Bar No. 212758)
mkline@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
1401 Willow Pass Road, Suite 700
Concord, California 94520-7982
Phone: 925 222 3400 ♦ Fax: 925 356 8250

Attorneys for Defendants YOSEMITE
HOSPITALITY, LLC and ARAMARK
CORPORATION (erroneously sued as
"Aramark")

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ALVAREZ SR., | Case No. |
| Plaintiff, | **NOTICE OF REMOVAL OF ACTION BY DEFENDANTS YOSEMITE HOPITALITY, LLC AND ARAMARK CORPORATION PURSUANT TO 28 U.S.C. §§ 1332, 1441 & 1446** |
| v. | |
| YOSEMITE NATIONAL PARK, YOSEMITE HOPITALITY, LLC; ARAMARK; BADGER PASS SKI AREA, | Action Filed:    1/10/22 |
| Defendants. | Trial Date:    None Set |

**TO THE JUDGES AND CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants YOSEMITE HOSPITALITY, LLC and ARAMARK CORPORATION (collectively, the "Aramark Defendants") hereby seek removal of the below-referenced action from the Superior Court of the State of California, County of Mariposa, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§1332, 1441, and 1446, and as more particularly set forth below.

/ / /

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

## I.   <u>THE STATE COURT ACTION</u>

On January 10, 2022, Plaintiff John Alvarez Sr. ("Plaintiff") filed a Complaint for General Negligence and Premises Liability (the "Complaint") in the Superior Court of the State of California, County of Mariposa, within the matter entitled *Alvarez v. Yosemite National Park, et al.*, Case No. 11771 (the "Action"). Within the Complaint, Plaintiff alleges that while visiting the "Badger Pass Ski Area located in Yosemite National Park and managed by [the Aramark Defendants]," he "slipped on 'black ice', causing him to fall and violently strike his head." Plaintiff alleges that he "sustained a permanent brain injury which has altered his life forever" as a result of the foregoing incident, which he claims was "the result of Defendants' failure to maintain the parking lot in a safe manner or give patrons notice that the parking lot was unsafe to walk in." The Aramark Defendants seek removal of the Action because state court is not the proper forum.

## II.   <u>CO-DEFENDANTS' CONSENT TO REMOVAL IS *NOT* REQUIRED</u>

"[N]ominal party defendants need not consent to removal; the exception to the general rule "ensures that only those parties with a palpable interest in the outcome of a case, and not those without any real stake, determine whether a federal court can hear a case." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 256, 259 (4th Cir. 2013); *see also, AGI Pub., Inc. v. HR Staffing, Inc.,* No. 1:12-CV-00879-AWI, 2012 WL 3260519, at *2 (E.D.Cal., Aug. 8, 2012), *citing Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193, n. 1 (9th Cir. 1988). "[T]here is no obligation to join [a sham] defendant in a removal petition." *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

The Complaint names two defendants in addition to the Aramark Defendants: "Yosemite National Park" ("Yosemite") and "Badger Pass Ski Area" ("Badger Pass"). Consent to removal from Yosemite and/or Badger Pass is not required under the authority cited above because neither exist as an entity capable of being sued; they are both the names of physical locations only. In addition, "[w]hen a civil action is removed solely under section 1441(a), [only those] defendants who have been ***properly joined and served*** must join in or consent to the removal of the action." Here, no consent to removal from Yosemite and Badger Pass is required, not only  because neither has been properly joined as a defendant to this matter, but because there is no possible way

1   Plaintiff could have properly served process on entities that **_do not exist_**. *See,* 28 U.S.C.

2   §1446(b)(2)(A).

3   **III.   REMOVAL IS TIMELY**

4           On August 24, 2022, Defendant Yosemite Hospitality, LLC was personally served with a

5   copy of the Complaint, Summons thereon, Civil Case Cover Sheet and Mariposa County Superior

6   Court Alternative Dispute Resolution Information Guide (the "ADR Guide"). No other documents

7   filed within the Action have been served on, nor otherwise been made available to, the Aramark

8   Defendants or their counsel.

9       • A true and correct copy of the **Complaint** is attached as **Exhibit A**.

10      • A true and correct copy of the **Summons** is attached as **Exhibit B**.

11      • A true and correct copy of the **Civil Case Cover Sheet** is attached as **Exhibit C**.

12      • A true and correct copy of the **ADR Guide** is attached as **Exhibit D**.

13          A defendant has thirty (30) days from the date of service of a summons and complaint to

14  remove an action to federal court. 28 *U.S.C.* §1446(b); *Murphy Bros., Inc. v. Michetti Pipe*

15  *Stringing, Inc.*, 526 U.S. 344, 354 (1999). Thirty days from August 24, 2022 is September 23,

16  2022. As this Notice has been filed and served on or before September 23, 2022, it is timely.

17  **IV.   REMOVAL IS PROPER**

18          "Any civil action" commenced in state court is removable if it *might have been*

19  *brought* originally in federal court. 28 U.S.C. §1441(a); *see, Exxon Mobil Corp. v. Allapattah*

20  *Services, Inc.*  545 U.S. 546, 563, (2005) ["[D]istrict court has original jurisdiction of a civil action

21  for purposes of §1441(a) as long as it has original jurisdiction over a subset of the claims

22  constituting the action"]. Therefore, the first step in determining removability is to consider

23  whether the action could have been brought in federal court – *i.e.*, whether either "diversity" or

24  "federal question" jurisdiction can be established. *Caterpillar Inc. v. Williams* 482 US 386, 392

25  (1987).

26  / / /

27  / / /

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

A.      **Diversity Jurisdiction Applies**

Diversity jurisdiction is established within 28 U.S.C. §1332, which states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, and is between … citizens of different States." Complete diversity of citizenship need only exist between Plaintiff and each Defendant; two or more Defendants may be citizens of the same state, so long as it is different than Plaintiff's state of citizenship. 28 U.S.C. §1332(a)(1).

1.      ***Complete Diversity Exists Between Plaintiff and Defendants***

When determining citizenship under 28 U.S.C. §1332:

1.      An individual is a citizen of a state in which they are domiciled [*Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983)];

2.      "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business" [28 U.S.C. § 1332(c)(1)];

3.      A limited liability company is considered to have the citizenship of all of its constituent members [*Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006)];

4.      The citizenship of nominal, sham and/or fraudulently named defendants (such as unincorporated entities incapable of being sued) need not be considered. *See, Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 816-817 (5th Cir. 1993) [unincorporated division of corporate entity named as separate defendant must be ignored as "fraudulently" joined because there was no basis for a judgment against it]; *see also, Weidman v. Exxon Mobil Corp.,* 776 F3d 214, 218 (4th Cir. 2015); *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001); *Stillwell v. Allstate Ins. Co.* 663 F.3d 1329, 1333 (11th Cir. 2011) [party's joinder is a "sham" or "fraudulent" when no possible cause of action has been stated against it]; and

5.      "[T]he citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441(b)(1); *see also, Gardiner Family, LLC v. Crimson Res. Mgmt. Corp.,* 147 F.Supp.3d 1029, 1036 (E.D. Cal. 2015) [holding that "Does" named in Complaint

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1  without any indication as to their identities or relationship to the action are wholly fictitious and

2  properly disregarded for jurisdictional purposes].

3        In this matter, complete diversity of citizenship exists because, at all times relevant

4  (including when the Complaint was filed and at the time of removal):

5        a.      The Aramark Defendants are informed and believe that Plaintiff JOHN

6  ALVAREZ SR. was a citizen of the State of California, domiciled in the County of Butte,

7  California. A true and correct copy of the results of an online public records search performed by

8  counsel for the Aramark Defendants on September 23, 2022 regarding the location of Plaintiff's

9  residence that confirms the foregoing is attached hereto as **Exhibit E**.

10        b.      As set forth within its limited liability company agreement on file with the

11  United States Security and Exchange Commission (a true and correct copy of which is attached as

12  **Exhibit F**), Defendant YOSEMITE HOPITALITY, LLC was a Delaware limited liability

13  company whose sole member was Aramark Sports & Entertainment Services, LLC ("ASE

14  Services"). In turn, at and all times relevant:

15        (1)      As set forth within its limited liability company agreement on file

16  with the United States Security and Exchange Commission (a true and correct copy of which is

17  attached as **Exhibit G**), ASE Services was a Delaware limited liability company whose sole

18  member was Aramark/HMS, LLC ("HMS");

19        (2)      As set forth within its limited liability company agreement on file

20  with the United States Security and Exchange Commission (a true and correct copy of which is

21  attached as **Exhibit H**), HMS was a Delaware limited liability company whose sole member was

22  Aramark Sports & Entertainment Group, LLC ("ASE Group); and

23        (3)      As set forth within its limited liability company agreement on file

24  with the United States Security and Exchange Commission (a true and correct copy of which is

25  attached as **Exhibit I**), ASE Group was a Delaware limited liability company whose sole member

26  was Defendant ARAMARK CORPORATION.

27        c.      Defendant ARAMARK CORPORATION was a Delaware corporation with

28  its principal place of business located in Philadelphia, Pennsylvania. True and correct copies of

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1   public records maintained by the Delaware Secretary of State and United States Securities and

2   Exchange Commission confirming the foregoing are attached hereto as **Exhibit J.**

3        d.      Defendants YOSEMITE NATIONAL PARK and BADGER PASS SKI

4   AREA were not legal entities capable of being sued and, as a result, are "sham" defendants whose

5   citizenship (to the extent it exists) must be ignored when determining the propriety of removal

6   jurisdiction on diversity grounds. *See, Jernigan, et al., supra.*

7              **2.      _The Amount in Controversy Exceeds $75,000_**

8        Once complete diversity of citizenship is established, a matter is properly removed to

9   federal court when "facially apparent" allegations in the complaint demonstrate the amount in

10  controversy exceeds the $75,000 jurisdictional limit of the federal court. *Luckett v. Delta Airlines,*

11  *Inc.,* 171 F3d 295, 298 (5th Cir. 1999) ["Facially apparent" from complaint amount satisfied due

12  to allegations of property damage, travel expenses, pain and suffering, etc.]; *White v. FCI USA,*

13  *Inc.* 319 F3d 672, 674 (5th Cir. 2003), ["Facially apparent" from wrongful termination allegations

14  showing "lengthy list of compensatory and punitive damages"]. To this end, the Court may make

15  reasonable deductions and inferences from the Complaint when considering what is "facially

16  apparent" from Plaintiff's allegations. *See, Roe v. Michelin North America, Inc.* 613 F3d 1058,

17  1061-1062 (11th Cir. 2010); *Luckett v. Delta Airlines, Inc.* 171 F3d 295, 298; see discussion at ¶

18  2:3245].

19       Plaintiff's Complaint contains multiple allegations that unequivocally make it facially

20  apparent (and readily so) that the amount in controversy will far exceed $75,000 in this case.

21  Specifically, the Complaint contains the following relevant allegations:

22       Plaintiff … slipped on "black ice," causing him to fall and _**violently strike his head**_,
         rendering him unconscious. Plaintiff sustained a _**permanent brain injury which**_
23       _**has altered his life forever**_…

24       When Plaintiff's son reached Plaintiff, Plaintiff was _**unconscious and bleeding**_
         _**from his head**_. Plaintiff was _**airlifted to U.C. Davis Medical Center**_ in Sacramento,
25       California, where he later regained consciousness. Plaintiff was subsequently
         diagnosed with _**severe head trauma, specifically a subdural hematoma and**_
26       _**resulting permanent brain injury**_.

27       As a direct and proximate result of Defendant's actions, Plaintiff sustained
         _**permanent injuries and was forced to incur medical damages, wage loss and loss**_
28       _**of earning capacity**_.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1    V.      **ALTERNATIVELY, FEDERAL QUESTION JURISDICTION APPLIES**

2            "Except as otherwise expressly provided by Act of Congress, any civil action brought in a

3    State court of which the district courts of the United States have original jurisdiction, may be

4    removed by the defendant or the defendants to the district court of the United States for the district

5    and division embracing the place where such action is pending." 28 U.S.C. §1441(a). Within his

6    Complaint, Plaintiff explicitly alleges that his injuries were caused by the "failure to maintain the

7    parking lot in a safe manner or give patrons notice that the parking lot was unsafe to walk in" by

8    all four named Defendants in this matter, including "Yosemite National Park, a public entity" and

9    "Badger Pass Ski Area, an entity of unknown form." However, Badger Pass Ski Area is the name

10   of a location within Yosemite National Park, ownership of which was ceded back to the Federal

11   Government by the State of California in 1906, and was within the exclusive control of the U.S.

12   Department of the Interior's National Park Service ("NPS") at all times relevant. *See generally,*

13   **Exhibit K** [including National Park Service's list of "Enabling Legislation" from 1864 through

14   2013].

15           In the event the Court is inclined to interpret the Complaint's naming of Yosemite and

16   Badger Pass as an expression of Plaintiff's intent to sue the division of the federal government that

17   actually owns and controls those areas (the NPS) and/or those NPS employees who failed to

18   satisfy their job duties, the Complaint would fall squarely within the exclusive subject matter

19   jurisdiction of the federal court. *To wit:*

20           Codified at 28 U.S.C. §2671, *et seq.,* the Federal Tort Claims Act ("FTCA") states that

21   federal courts have jurisdiction over negligence-based claims made against employees of the

22   United States based on acts or omissions made within the course and scope of their employment.

23   *See also,* 28 U.S.C. §1346(b). 28 USC § 2679(b)(1) makes clear that the FTCA is not only the

24   *exclusive remedy* for such tort claims, but it requires such claims to be filed against the United

25   States government itself. As a result, when a government employee is sued directly, the FTCA

26   requires the matter to be submitted to the Attorney General for the purpose of determining whether

27   the employee was acting within the scope of employment at the time of the conduct on which the

28   suit is based. 28 U.S.C. § 2679(b)(1), (d)(1). If it is determined that the act or omission fell within

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1  the scope of employment, the United States must be substituted into the case as the proper

2  defendant. *Osborn v. Haley* 549 U.S. 225, 229 (2007).

3          Even though Plaintiff's causes of action for Negligence and Premises Liability would not

4  fall under the scope of the FTCA if solely alleged against the Aramark Defendants, the fact that

5  the FTCA would apply to the same causes of action if filed solely against the NPS (or its

6  employees) controls the Court's determination of whether removal is proper. This is because

7  removal is still appropriate where purely state-based claims are transactionally (*i.e.*,

8  "supplemental") to at least one substantial federal claim. *Zuniga v. Blue Cross & Blue Shield of*

9  *Michigan* 52 F3d 1395, 1399 (6th Cir. 1995) [removal upheld where claims not arising under

10 federal law were related to federal due process claim]; 28 U.S.C. §1367. Given that Plaintiff

11 alleges the same set of underlying facts against all Defendants, there can be no question that in the

12 event the Court determines the NPS to be the intended named defendant within Plaintiff's

13 Complaint, the FTCA applies, and the matter may only be brought in federal court against all

14 Defendants.

15 **VI.    CONCLUSION**

16         Because all properly named Defendants are citizens of states that are completely diverse

17 from Plaintiff's state of citizenship and the Action involves an amount-in-controversy exceeding

18 $75,000, the requirements for diversity jurisdiction removal under 28 U.S.C. §§1332(a) and

19 1441(a) are satisfied and this Court has original jurisdiction over the Action. In the alternative,

20 should the Court determine that the NPS was constructively named as a defendant within

21 Plaintiff's Complaint, removal remains proper based on federal question jurisdiction, pursuant to

22 28 U.S.C. §1441(a).

23         WHEREFORE, further proceedings in the Superior Court of the State of California,

24 County of Mariposa, within the matter entitled *Alvarez v. Yosemite National Park, et al.*, Case No.

25 11771, must be discontinued, and this action shall be removed to the United States District Court

26 for the Eastern District of California.

27 / / /

28 / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1        This Notice and all Exhibits attached hereto are signed pursuant and subject to the

2  certification requirements of Rule 11 of the Federal Rules of Civil Procedure.

3

4

5  DATED:  September 26, 2022      WOOD, SMITH, HENNING & BERMAN LLP

6

7                    By:  _____

8                       THOMAS D. FAMA

9                       MICHAEL G. KLINE

                         Attorneys for Defendants YOSEMITE HOSPITALITY,

10                 LLC and ARAMARK CORPORATION (erroneously

                       sued as "Aramark")

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

# EXHIBIT A

PLD-PI-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
VICTOR M. PEREZ 114381
PEREZ LAW FIRM
1304 W. CENTER AVENUE
VISALIA, CA 93291
TELEPHONE NO.: (559) 625-2626      FAX NO.*(Optional):* (559) 625-3064
E-MAIL ADDRESS *(Optional):*  theperezlawfirm1@aol.com
ATTORNEY FOR *(Name):*  JOHN ALVAREZ SR.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   MARIPOSA
STREET ADDRESS: 5088 Bullion Street
MAILING ADDRESS:
CITY AND ZIP CODE: Mariposa, CA 95338
BRANCH NAME:

PLAINTIFF:  JOHN ALVAREZ SR.

DEFENDANT: YOSEMITE NATIONAL PARK, YOSEMITE
HOPITALITY, LLC; ARAMARK; BADGER PASS SKI AREA
[X] DOES 1 TO 50

FOR COURT USE ONLY

FILED
MARIPOSA SUPERIOR COURT
JAN 1 0 2022
KM ESTEP
COURT CLERK

**COMPLAINT-Personal Injury, Property Damage, Wrongful Death**
☐ **AMENDED** *(Number):*
**Type** *(check all that apply):*
☐ MOTOR VEHICLE   [X] OTHER *(specify):*
☐ Property Damage   ☐ Wrongful Death
[X] Personal Injury   ☐ Other Damages *(specify):*

**Jurisdiction** *(check all that apply):*
☐ ACTION IS A LIMITED CIVIL CASE
Amount demanded   ☐ does not exceed $10,000
                  ☐ exceeds $10,000, but does not exceed $25,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint
    ☐ from limited to unlimited
    ☐ from unlimited to limited

CASE NUMBER:

117711

1.  Plaintiff *(name or names):* JOHN ALVAREZ SR.

    alleges causes of action against **defendant** *(name or names):* YOSEMITE NATIONAL PARK, YOSEMITE
    HOPITALITY, LLC; ARAMARK; BADGER PASS SKI AREA
2.  This pleading, including attachments and exhibits, consists of the following number of pages:
3.  Each plaintiff named above is a competent adult
    a.  ☐ except plaintiff *(name):*
        (1) ☐ a corporation qualified to do business in California
        (2) ☐ an unincorporated entity *(describe):*
        (3) ☐ a public entity *(describe):*
        (4) ☐ a minor   ☐ an adult
            (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
            (b) ☐ other *(specify):*
        (5) ☐ other *(specify):*

    b.  ☐ except plaintiff *(name):*
        (1) ☐ a corporation qualified to do business in California
        (2) ☐ an unincorporated entity *(describe):*
        (3) ☐ a public entity *(describe):*
        (4) ☐ a minor   ☐ an adult
            (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
            (b) ☐ other *(specify):*
        (5) ☐ other *(specify):*

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

COPY

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]    CEB ceb.com  Essential Forms    **COMPLAINT-Personal Injury, Property
Damage, Wrongful Death**    Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

Alvarez, John Sr.

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Alvarez vs. Yosemite National Park | 11771 |

4. ☐ Plaintiff *(name)*: JOHN ALVAREZ SR.
is doing business under the fictitious name *(specify)*:

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

a. ☒ except defendant *(name)*:
   YOSEMITE NATIONAL PARK
   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☒ a public entity *(describe)*:
   NATIONAL PARK
   (5) ☐ other *(specify)*:

c. ☒ except defendant *(name)*:
   ARAMARK
   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

b. ☒ except defendant *(name)*:
   YOSEMITE HOSPITALITY LLC
   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☒ other *(specify)*:
   A LIMITED LIABILITY CORPORATION

d. ☒ except defendant *(name)*:
   BADGER PASS SKI AREA
   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity *(describe)*:

   (4) ☐ a public entity *(describe)*:

   (5) ☐ other *(specify)*:

☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. ☒ Doe defendants *(specify Doe numbers)*: 1-24 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. ☒ Doe defendants *(specify Doe numbers)*: 25-50 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names)*:

8. This court is the proper court because
   a. ☐ at least one defendant now resides in its jurisdictional area.
   b. ☒ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other *(specify)*:

9. ☐ Plaintiff is required to comply with a claims statute, **and**
   a. ☒ has complied with applicable claims statutes, **or**
   b. ☐ is excused from complying because *(specify)*:

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Alvarez, John Sr.

CEB Essential Forms
ceb.com

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Alvarez vs. Yosemite National Park | 11771 |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☒ Premises Liability
   f. ☐ Other *(specify)* :

11. Plaintiff has suffered
   a. ☒ wage loss
   b. ☐ loss of use of property
   c. ☒ hospital and medical expenses
   d. ☒ general damage
   e. ☐ property damage
   f. ☒ loss of earning capacity
   g. ☐ other damage *(specify)* :

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
      (1) ☒ according to proof
      (2) ☐ in the amount of: $

15. ☒ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:
   6a, 6b

Date: *1-7-22*

VICTOR M. PEREZ
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]

CEB® | Essential Forms
ceb.com

**COMPLAINT-Personal Injury, Property Damage, Wrongful Death**

Alvarez, John Sr.

Page 3 of 3

PLD-PI-001(4)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Alvarez vs. Yosemite National Park | 11771 |

FIRST _____   **CAUSE OF ACTION - Premises Liability**   Page _4_
_(number)_

ATTACHMENT TO [X] Complaint  [ ] Cross-Complaint
_(Use a separate cause of action form for each cause of action.)_

**Prem.L-1.** Plaintiff _(name):_ JOHN ALVAREZ SR.
alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.
On _(date):_ January 18, 2020 _____ plaintiff was injured on the following premises in the following
fashion _(description of premises and circumstances of injury):_
Plaintiff and his family had just arrived at Badger Pass Ski Area located in Yosemite National Park and
managed by Yosemite Hospitality LLc, a subsidiary of Aramark. Plaintiff had patronized this area on
numerous prior occasions. During each previous visit, the common walking areas had been treated (with
salt, sand, etc.). Unbeknownst to Plaintiff, on this day the areas had not been treated and were extremely
slick and slippery due to ice. As Plaintiff walked in the area, he slipped on "black ice", causing him to fall
and violently strike his head, rendering him unconscious. Plaintiff sustained these injuries as a result of
Defendants' failure to maintain the parking lot in a safe manner or give patrons notice that the parking lot
was unsafe to walk in. Plaintiff sustained a permanent brain injury which has altered his life forever.

**Prem.L-2.** [X] **Count One-Negligence** The defendants who negligently owned, maintained, managed and operated
the described premises were _(names):_
YOSEMITE NATIONAL PARK, YOSEMITE HOSPITALITY LLC, ARAMARK, BADGER
PASS SKI AREA

[X] Does _1_ to _50_

**Prem.L-3.** [X] **Count Two-Willful Failure to Warn** [Civil Code section 846] The defendant owners who willfully or
maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were
_(names):_ YOSEMITE NATIONAL PARK, YOSEMITE HOSPITALITY LLC,
ARAMARK, BADGER PASS SKI AREA

[X] Does _1_ to _50_
Plaintiff, a recreational user, was [ ] an invited guest [X] a paying guest.

**Prem.L-4.** [X] **Count Three-Dangerous Condition of Public Property** The defendants who owned public property on
which a dangerous condition existed were _(names):_
YOSEMITE NATIONAL PARK, BADGER PASS SKI AREA

[X] Does _1_ to _50_
a. [X] The defendant public entity had [ ] actual [X] constructive notice of the existence of the
dangerous condition in sufficient time prior to the injury to have corrected it.
b. [ ] The condition was created by employees of the defendant public entity.

**Prem.L-5.** a. [X] **Allegations about Other Defendants** The defendants who were the agents and employees of the other
defendants and acted within the scope of the agency were _(names):_
YOSEMITE NATIONAL PARK, YOSEMITE HOSPITALITY LLC, ARAMARK, BADGER
PASS SKI AREA

[X] Does _1_ to _25_
b. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are
[ ] described in attachment Prem.L-5.b [X] as follows _(names):_
YOSEMITE NATIONAL PARK, YOSEMITE HOSPITALITY LLC, ARAMARK, BADGER
PASS SKI AREA

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(4) [Rev. January 1, 2007]
CEB® Essential Forms
ceb.com
**CAUSE OF ACTION - Premises Liability**
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

Alvarez, John Sr.

PLD-PI-001(2)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Alvarez vs. Yosemite National Park- | 11771 |

SECOND
(number)

**CAUSE OF ACTION- General Negligence**   Page 5

ATTACHMENT TO ☐ Complaint   ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name)* :   JOHN ALVAREZ SR.

alleges that defendant *(name)*:   YOSEMITE NATIONAL PARK, YOSEMITE HOSPITALITY LLC
ARAMARK; BADGER PASS SKI AREA

☒ Does   1   to  50

was the legal (proximate) cause of damages to plaintiff.   By the following acts or omissions to act, defendant
negligently caused the damage to plaintiff
on *(date)*:   January 18, 2020
at *(place)*:   Badger Pass Ski Area, part of Yosemite National Park

*(description of reasons for liability)* :
On January 18, 2020, Plaintiff and hs family had just arrived at Badger Pass Ski Area located in Yosemite
National Park.  Plaintiff was not an infrequent visitor to the area and had previously been there on
numerous occasions.  On all of those previous visits, the walking areas were treated with a substance
(salt, sand, etc.) which rendered the walking areas safe.  Unbeknownst to Plaintiff, on the date of this
incident, the walking areas had not been treated in order to make it safe for visitors to walk on the area.
As Plaintiff began walking in an untreated common area, he slipped on "black ice", causing him to fall and
violently strike his head, rendering him unconscious.  Plaintiff sustained these injuries as a result of
Defendant's failure to maintain the parking lot in a safe manner or give patrons notice that the parking lot
was unsafe to walk in.,

When Plaintiff's son reached Plaintiff, Plaintiff was unconscious and bleeding from his head.  Plaintiff was
airlifted to U.C. Davis Medical Center in Sacramento, California, where he later regained consccciousnes.
Plaintiff was subsequenty diagnosed with severe head trauma, specifically a subdural hematoma and
resulting permanent brain injury.

As a direct and proximate result of Defendant's actions, Plaintiff sustained permanent injuries and was
forced to incur medical damages,  wage loss and loss of earning capacityy

Page 1 of 1

CEB | Essential Forms   ceb.com

Alvarez, John Sr.

# EXHIBIT B

**SUMMONS**

*(CITACIÓN JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*



FILED

MARIPOSA SUPERIOR COURT

JAN 1 0 2022

KM ESTEP

COURT CLERK

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
YOSEMITE NATIONAL PARK, YOSEMITE HOSPITALITY LLC;
ARAMARK; BADGER PASS SKI AREA; and DOES 1 to 50

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN ALVAREZ SR.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER: *(Número del caso):* **17711**

MARIPOSA COUNTY SUPERIOR COURT
5088 Bullion Street
Mariposa, CA 95338

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
VICTOR M. PEREZ 114381 PEREZ LAW FIRM
1304 W. CENTER AVENUE (559) 625-2626
VISALIA, CA 93291

DATE: JAN 1 0 2022                     Clerk, by KM ESTEP                     , Deputy
*(Fecha)*                               *(Secretario)*                         *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

[SEAL]

(SEAL)

3. ☒ on behalf of *(specify):* YOSEMITE HOSPITALITY LLC;

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☒ other *(specify):* CCP 17701.16

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

CEB® Essential Forms
ceb.com

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Alvarez, John Sr.

# EXHIBIT C

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

VICTOR M. PEREZ 114381
PEREZ LAW FIRM
1304 W. CENTER AVENUE
VISALIA, CA 93291
TELEPHONE NO.: (559) 625-2626   FAX NO. *(Optional)*: (559) 625-3064
E-MAIL ADDRESS: theperezlawfirm1@aol.com
ATTORNEY FOR *(Name)*: JOHN ALVAREZ SR.

**FILED**
MARIPOSA SUPERIOR COURT
JAN 1 0 2022
KM ESTEP
COURT CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   MARIPOSA
STREET ADDRESS: 5088 Bullion Street
MAILING ADDRESS:
CITY AND ZIP CODE: Mariposa, CA 95338
BRANCH NAME:

CASE NAME:   Alvarez vs. Yosemite National Park

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited | [ ] Limited | [ ] Counter | [ ] Joinder | **11771** |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [X] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence       f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*:   a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: 2
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 1-7-22

VICTOR M. PEREZ
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**COPY**

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | [CEB logo] Essential<br>ceb.com [CEB] Forms | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|---|

Alvarez, John Sr.

**11771**

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

Alvarez, John Sr.

# EXHIBIT D

LEGAL:05000-1476/12809858.1

# Superior Court of California, County of Mariposa

## Alternative Dispute Resolution (ADR) Information Guide

Adapted from the Administrative Office of the Courts' publication:
"Alternative Dispute Resolution, *Options for Resolving Your Dispute*"

# ADR INFORMATION GUIDE

## There Are Alternatives to Going to Trial

Did you know that 95 percent of all civil cases filed in court were resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach agreement. Because of these potential advantages, it is worth considering using ADR early in a lawsuit, or even before you file a lawsuit.

## Potential Advantage of ADR

Here are some potential advantages of using ADR:

1) **Saves Time**: A dispute often can be settled or resolved much sooner with ADR.
2) **Saves Money**: When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and experts' fees.
3) **Increases Control Over the Process and the Outcome**: In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have the opportunity to tell their side of the story as they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR Processes, such as arbitration, allow the parties to choose a qualified person or expert in a particular field to decide the dispute.
4) **Preserves Ongoing Relationships**: ADR can be a less adversarial way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve such as in cases involving a business partner, family member or customer-vendor relationship.
5) **Increases Satisfaction**: In trial, there is typically a winner and a loser. The loser is not likely to be happy, and in some cases the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their respective goals. This, along with other potential advantages of ADR, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
6) **Fosters Attorney-Client Relationships**: Parties and Attorneys may also benefit from ADR by exploring their roles as problem-solvers and counselors rather than merely acting as adversaries. Quick, cost-effective, and satisfying resolutions are likely to produce happier parties and stronger relationships with their attorneys.

## What Are the ADR Options?

The most commonly used ADR processes are Mediation, Arbitration, Neutral Case Evaluation, and Settlement Conferences. Each of these ADR processes is described below.

### ➢ Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can settle the dispute themselves. Mediation leaves control of the outcome with the parties.

Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can listen to the parties and help them communicate in an effective and nondestructive manner.

### ➢ Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed.

Arbitration may be either "binding" or "non-binding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Non-binding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision. Arbitrations may also be used to set maximum and minimum awards, known as high-low arbitrations. This allows the plaintiff to have a guaranteed minimum recovery and defendant to rely on a guaranteed absolute maximum exposure, regardless of how the arbitration unfolds.

*Cases for Which Arbitration May be Appropriate*: Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

### ➢ Neutral Case Evaluation

In Neutral Case Evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a base for trying to negotiate a resolution of the dispute. Even if not successful in resolving the case, Neutral Case Evaluation can lead to use of other ADR procedures, such as arbitration or mediation, especially when undertaken early in the litigation.

*Cases for Which Neutral Case Evaluation May Be Appropriate*:
Neutral Case Evaluation is appropriate for most cases, and may be most useful in cases that involve technical issues that require special expertise to resolve or in cases that the only significant issue is the amount of damages.

## ➢ Settlement Conferences

Settlement Conferences may be either mandatory or voluntary. In both types of Settlement Conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences are often held close to the date a case is set for trial.

## Serving the ADR Information Packet

The ADR Information Packet, which is provided to all plaintiffs initiating a lawsuit, consists of: 1) The ADR Information Guide, and 2) The ADR Stipulation Form. The Plaintiff must serve a copy of the ADR Packet on each defendant with the complaint. Cross-complainants must serve a copy of the ADR Packet on all new Cross-defendants with the cross-complaint.

# EXHIBIT E

LEGAL:05000-1476/12809858.1

**People Finder - Historic Tracker Record**

## Source Information

| | |
|---|---|
| Information Current Through: | 08/31/2022 |
| Database Last Updated: | 09/05/2022 |
| Update Frequency: | MONTHLY |
| Current Date: | 09/26/2022 |
| Source: | TRANS UNION |

## Individual Information

| | |
|---|---|
| Name: | ALVAREZ, JOHN LUIS, SR |
| Also Known As | ALVAREZ, JOHN LUIS |
| | ALVAREZ, JOHN |
| | ALVAREZ, JOHN L |
| | ALVAREZ, JOHN L |
| SSN: | 557-80-XXXX |
| Date of Birth: | 02/XX/1954 |
| On File Since: | 09/01/1976 |

## Last Known Address Information

| | |
|---|---|
| Current Address: | 1825 ELGIN ST OROVILLE, CA 95966-5921 |
| Phone Number 1: | 831-758-1641 |
| Phone Number 2: | 386-760-2129 |
| Address First Reported: | 07/31/2019 |

## Other Address Information

| | |
|---|---|
| Previous Address: | 2335 CHEIM BL 4 MARYSVILLE, CA 95901-3566 |
| Phone Number 1: | 559-763-4345 |
| Phone Number 2: | 386-322-9526 |
| Address First Reported: | 07/01/2016 |
| Previous Address: | 320 J ST ORANGE COVE, CA 93646-2485 |
| Phone Number 1: | 559-626-0611 |
| Phone Number 2: | 530-743-7296 |
| Address First Reported: | 12/01/2013 |
| Previous Address: | 2335 CHEIM BL MARYSVILLE, CA 95901-3566 |
| Phone Number 1: | 530-743-6986 |
| Address First Reported: | 03/17/2008 |
| Previous Address: | 2086 VIRGILIA LN OLIVEHURST, CA 95961-7520 |
| Address First Reported: | 07/18/2001 |
| Previous Address: | 906 CLARK AV YUBA CITY, CA 95991-3816 |
| Address First Reported: | 07/18/2001 |
| Previous Address: | 3922 BIGLOW DR OLIVEHURST, CA 95961-4413 |
| Address First Reported: | 07/18/2001 |
| Previous Address: | 869 CLARK AV 315 YUBA CITY, CA 95991-3857 |

| **Address First Reported:** | 07/18/2001 |
| **Previous Address:** | 1131 GRAND AV OLIVEHURST, CA 95961-8171 |
| **Address First Reported:** | 11/13/2000 |
| **Previous Address:** | 1723 HUSTON ST MARYSVILLE, CA 95901-3914 |
| **Address First Reported:** | 02/01/1999 |
| **Previous Address:** | 2465 MAPLE ST SUTTER, CA 95982-2222 |
| **Address First Reported:** | 10/01/1998 |

*Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec. 1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose authorized under the FCRA or in relation to taking an adverse action relating to a consumer application.*

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.   2

# EXHIBIT F

Case 1:22-cv-01228-JLT-EPG   Document 1   Filed 09/26/22   Page 30 of 64

EX-3.227 19 d309366dex3227.htm EX-3.227

**Exhibit 3.227**

## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## YOSEMITE HOSPITALITY, LLC

A Delaware Limited Liability Company

THIS LIMITED LIABILITY COMPANY AGREEMENT (the "Agreement") of **Yosemite Hospitality, LLC** (the "Company"), dated and effective as of **November 6, 2014** is entered into by the undersigned to form a limited liability company under the laws of the State of Delaware for the purposes and upon the terms and conditions hereinafter set forth.

## RECITALS

**WHEREAS, Aramark Sports and Entertainment Services, LLC** ("ASES") is the sole member of the Company; and

**WHEREAS, A**SES desires that the Agreement be the sole governing document of the Company

The Agreement is therefore set forth as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1 _Definitions._ Whenever used in this Agreement the following terms shall have the meanings respectively assigned to them in this Article I unless otherwise expressly provided herein or unless the context otherwise requires:

_Act._ "Act" shall mean the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq., as amended from time to time.

_Agreement._ "Agreement" shall mean this Limited Liability Company Agreement of the Company as the same may be amended or restated from time to time in accordance with its terms.

_Company:_ "Company" shall mean **Yosemite Hospitality, LLC**, a Delaware limited liability company formed pursuant to the Act and this Agreement.

_Member:_ "Member" shall mean **Aramark Sports and Entertainment Services, LLC** and any person or entity hereafter admitted to the Company as a member of the Company as provided in this Agreement.

## ARTICLE II
## FORMATION OF THE COMPANY

2.1. _Formation of Limited Liability Company._ ASES has (a) organized the Company pursuant to the Act and (b) caused a Certificate of Formation to be filed with the Secretary of State, and the Secretary of State has returned a certified copy.

2.2. _Business Purpose._ The Company is organized for the purposes of engaging in any lawful act or activity for which limited liability companies may be organized under the Act.

2.3. _Period of Duration._ The term of the Company shall continue in perpetuity, unless the Company is earlier dissolved pursuant to law or the provisions of this Agreement.

2.4. _Foreign Qualification._ The Company shall perform such acts as may be necessary or appropriate to register the Company as a foreign limited liability company authorized to do business in such jurisdictions as the Company shall deem necessary or appropriate in connection with the business of the Company.

## ARTICLE III
## REGISTERED AGENT AND REGISTERED OFFICE

3.1. *Registered Agent and Registered Office.* The name and address of the registered agent for service of process on the Company in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801. The registered office of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801.

## ARTICLE IV
## CAPITAL CONTRIBUTIONS

4.1. *Initial Capital.* ASES has contributed cash or property of an agreed value as set forth in the books and records of the Company.

## ARTICLE V
## MEMBERS, OFFICERS, CONSENT

5.1 *Members.* Upon execution of this Agreement, ASES is admitted as the sole member of the Company. New members of the company may be admitted upon the written consent of ASES.

5.2. *Management.* Except as otherwise specifically provided in this Agreement, ASES shall have the authority to, and shall, conduct the affairs of the Company.

5.3. *Authorized Person.* Any officer of the Company is designated as an authorized person, within the meaning of the Act, to execute, deliver and file, or to cause the execution, delivery and filing of, all certificates (and any amendments and/or restatements thereof) required or permitted by the Act to be filed in the office of the Secretary of State of the State of Delaware and all acts committed in furtherance thereof are ratified.

5.4 *Officers.*

(a) ASES shall appoint a President, one or more vice presidents, a Secretary and a Treasurer, and shall from time to time appoint such other officers as it may deem proper.

(b) The term of office of all officers shall be until their respective successors are chosen and qualified, but any officer may be removed from office at any time by ASES without cause assigned.

(c) The President, vice president and the Treasurer of the Company, and each of them, are hereby delegated the power, authority and responsibility of the day-to-day management, administrative, financial and implementive acts of the Company's business, and each of them shall have the right and power to bind the Company and to make the final determination on questions relative to the usual and customary daily business decisions, affairs and acts of the Company.

Except as otherwise specifically provided in this Agreement, the officers shall have such duties as usually pertain to their offices except as modified by ASES, and shall also have such powers and duties as may from time to time be conferred upon them by ASES.

5.5. *Method of Giving Consent.* Any consent of a member required by this Agreement may be given by a written consent.

## ARTICLE VI
## DISSOLUTION

Case 1:22-cv-01228-JLT-EPG Document ... Filed 09/26/22 Page 33 of 64

6.1 _Dissolution_. The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act; or (iii) at any time there are no Members of the Company, unless the Company is continued in accordance with the Act or this Agreement.

(Signature page follows.)

**IN WITNESS WHEREOF,** the member has hereunto set its hand as of the day and year first above written.

Aramark Sports and Entertainment Services, LLC Sole Member

By:  /s/ Patricia A. Rapone

Patricia A. Rapone, Vice President

# EXHIBIT G

LEGAL:05000-1476/12809858.1

Case 1:22-cv-01228-JLT-EPG   Document 1   Filed 09/26/22   Page 36 of 64

EX-3.150 149 dex3150.htm LIMITED LIABILITY COMPANY AGT OF ARAMARK SPORTS & ENTERTAINMENT SVCS, LLC

**Exhibit 3.150**

## LIMITED LIABILITY COMPANY AGREEMENT
### OF
### ARAMARK SPORTS AND ENTERTAINMENT SERVICES, LLC
A Delaware Limited Liability Company

THE UNDERSIGNED is executing this Limited Liability Company Agreement (the "Agreement") dated as of April 9, 2007 for the purpose of (i) effectuating the conversion (the "Conversion") of ARAMARK Sports and Entertainment Services, Inc., a Delaware corporation (the "Converted Corporation"), to a Delaware limited liability company (the "Company"), and (ii) adopting a limited liability company agreement for the governance of the business and affairs of the Company, each pursuant to the provisions of the Act (as defined below).

1. Name; Formation. The name of the Company shall be **ARAMARK Sports and Entertainment Services, LLC** or such other name as the Member may from time to time hereafter designate. The Company constitutes a continuation of the existence of the Converted Corporation in the form of a Delaware limited liability company. In accordance with Section 18-214(b) of the Act, the Certificate of Conversion (converting the Converted Corporation to the Company) and the Certificate of Formation of the Company have been duly executed by a Member or other person designated by a Member or by any officer, agent or employee of the registered agent of the Company in the State of Delaware (any such person being an authorized person to take such action) and filed in the Office of the Secretary of State of the State of Delaware. As provided in Section 18-214(d) of the Act, the existence of the Company is deemed to have commenced on February 28, 1966, the date the Converted Corporation was originally organized under the laws of the State of Delaware.

2. Definitions. Whenever used in this Agreement the following terms shall have the meanings respectively assigned to them in this Section 2 unless otherwise expressly provided herein or unless the context otherwise requires:

_Act._ "Act" shall mean the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq., as amended from time to time.

_Agreement._ "Agreement" shall mean this Limited Liability Company Agreement of the Company as the same may be amended or restated from time to time in accordance with its terms.

_Company_: "Company" shall mean ARAMARK Sports and Entertainment Services, LLC, a Delaware limited liability company formed pursuant to the Act and this Agreement.

_Member_: "Member" shall mean ARAMARK/HMS, LLC and any person or entity hereafter admitted to the Company as a member of the Company as provided in this Agreement.

3. _Business Purpose._ The Company is organized for the purposes of engaging in any lawful act or activity for which limited liability companies may be organized under the Act.

4. _Period of Duration_. The term of the Company shall continue in perpetuity, unless the Company is earlier dissolved pursuant to law or the provisions of this Agreement.

5. *Foreign Qualification.* The Company shall perform such acts as may be necessary or appropriate to register the Company as a foreign limited liability company authorized to do business in such jurisdictions as the Company shall deem necessary or appropriate in connection with the business of the Company.

6. *Registered Agent and Registered Office.* The name and address of the registered agent for service of process on the Company in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801. The registered office of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801.

7. *Members.* Upon the effectiveness of the Conversion, ARAMARK/HMS, LLC a Delaware limited liability company, formerly, ARAMARK/HMS Company, a Delaware corporation and the sole stockholder of the Converted Company prior to conversion ("ARAMARK"), is admitted as the Sole Member of the Company. New Members of the Company may be admitted upon the written consent of ARAMARK.

8. *Capital Contribution.* The cash, property or services previously contributed by ARAMARK to the Converted Corporation, the identified and agreed value of which are recorded in the books and records of the Company, constitute the capital contribution of ARAMARK to the Company. ARAMARK shall have no obligation to make any further capital contributions to the Company. Persons or entities hereafter admitted as Members of the Company shall make such contributions of cash, property or services to the Company as shall be determined by ARAMARK at the time of each such admission.

9. *Management.* Except as otherwise specifically provided in this Agreement, ARAMARK shall have the authority to, and shall, conduct the affairs of the Company.

10. *Authorized Person.* Any officer of the Company is designated as an authorized person, within the meaning of the Act, to execute, deliver and file, or to cause the execution, delivery and filing of, all certificates (and any amendments and/or restatements thereof) required or permitted by the Act to be filed in the office of the Secretary of State of the State of Delaware and all acts committed in furtherance thereof are ratified.

11. *Officers.*

(a) ARAMARK shall appoint a President, one or more vice presidents, a Secretary and a Treasurer, and shall from time to time appoint such other officers as it may deem proper.

(b) The term of office of all officers shall be until their respective successors are chosen and qualified, but any officer may be removed from office at any time by ARAMARK without cause assigned.

(c) The President, vice president and the Treasurer of the Company, and each of them, are hereby delegated the power, authority and responsibility of the day-to-day management, administrative, financial and implementive acts of the Company's business, and each of them shall have the right and power to bind the Company and to make the final determination on questions relative to the usual and customary daily business decisions, affairs and acts of the Company.

Except as otherwise specifically provided in this Agreement, the officers shall have such duties as usually pertain to their offices except as modified by ARAMARK, and shall also have such powers and duties as may from time to time be conferred upon them by ARAMARK.

12. _Method of Giving Consent._ Any consent of a Member required by this Agreement may be given by a written consent.

13. _Dissolution_. The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act; or (iii) at any time there are no Members of the Company, unless the Company is continued in accordance with the Act or this Agreement.

(Signature page follows)

**IN WITNESS WHEREOF,** the Member has hereunto set its hand as of the day and year first above written.

**ARAMARK/HMS, LLC**
**Sole Member**

By    /s/ Alexander P. Marino
              Alexander P. Marino
              Vice President

# EXHIBIT H

LEGAL:05000-1476/12809858.1

EX-3.92 91 dex392.htm LIMITED LIABILITY COMPANY AGT OF ARAMARK/HMS, LLC

**Exhibit 3.92**

**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**ARAMARK/HMS, LLC**

A Delaware Limited Liability Company

THE UNDERSIGNED is executing this Limited Liability Company Agreement (the "Agreement") dated as of April 4, 2007 for the purpose of (i) effectuating the conversion (the "Conversion") of ARAMARK/HMS Company a Delaware corporation (the "Converted Corporation"), to a Delaware limited liability company (the "Company"), and (ii) adopting a limited liability company agreement for the governance of the business and affairs of the Company, each pursuant to the provisions of the Act (as defined below).

1. Name; Formation. The name of the Company shall be **ARAMARK/HMS, LLC** or such other name as the Member may from time to time hereafter designate. The Company constitutes a continuation of the existence of the Converted Corporation in the form of a Delaware limited liability company. In accordance with Section 18-214(b) of the Act, the Certificate of Conversion (converting the Converted Corporation to the Company) and the Certificate of Formation of the Company have been duly executed by a Member or other person designated by a Member or by any officer, agent or employee of the registered agent of the Company in the State of Delaware (any such person being an authorized person to take such action) and filed in the Office of the Secretary of State of the State of Delaware. As provided in Section 18-214(d) of the Act, the existence of the Company is deemed to have commenced on October 4, 1994, the date the Converted Corporation was originally organized under the laws of the State of Delaware.

2. Definitions. Whenever used in this Agreement the following terms shall have the meanings respectively assigned to them in this Section 2 unless otherwise expressly provided herein or unless the context otherwise requires:

*Act.* "Act" shall mean the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq., as amended from time to time.

*Agreement.* "Agreement" shall mean this Limited Liability Company Agreement of the Company as the same may be amended or restated from time to time in accordance with its terms.

*Company*: "Company" shall mean ARAMARK/HMS, LLC, a Delaware limited liability company formed pursuant to the Act and this Agreement.

*Member*: "Member" shall mean ARAMARK Sports and Entertainment Group, LLC and any person or entity hereafter admitted to the Company as a member of the Company as provided in this Agreement.

3. *Business Purpose.* The Company is organized for the purposes of engaging in any lawful act or activity for which limited liability companies may be organized under the Act.

4. *Period of Duration.* The term of the Company shall continue in perpetuity, unless the Company is earlier dissolved pursuant to law or the provisions of this Agreement.

5. *Foreign Qualification.* The Company shall perform such acts as may be necessary or appropriate to register the Company as a foreign limited liability company authorized to do business in such jurisdictions as the Company shall deem necessary or appropriate in connection with the business of the Company.

6. *Registered Agent and Registered Office.* The name and address of the registered agent for service of process on the Company in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801. The registered office of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801.

7. *Members.* Upon the effectiveness of the Conversion, ARAMARK Sports and Entertainment Group, LLC, a Delaware limited liability company, formerly, ARAMARK Sports and Entertainment Group, Inc., a Delaware Corporation and the sole stockholder of the Converted Company prior to conversion ("ARAMARK"), is admitted as the Sole Member of the Company. New Members of the Company may be admitted upon the written consent of ARAMARK.

8. *Capital Contribution.* The cash, property or services previously contributed by ARAMARK to the Converted Corporation, the identified and agreed value of which are recorded in the books and records of the Company, constitute the capital contribution of ARAMARK to the Company. ARAMARK shall have no obligation to make any further capital contributions to the Company. Persons or entities hereafter admitted as Members of the Company shall make such contributions of cash, property or services to the Company as shall be determined by ARAMARK at the time of each such admission.

9. *Management.* Except as otherwise specifically provided in this Agreement, ARAMARK shall have the authority to, and shall, conduct the affairs of the Company.

10. *Authorized Person.* Any officer of the Company is designated as an authorized person, within the meaning of the Act, to execute, deliver and file, or to cause the execution, delivery and filing of, all certificates (and any amendments and/or restatements thereof) required or permitted by the Act to be filed in the office of the Secretary of State of the State of Delaware and all acts committed in furtherance thereof are ratified.

Case 1:22-cv-01228-JLT-EPG   Document 1   Filed 09/26/22   Page 43 of 64

11. _Officers._

(a) ARAMARK shall appoint a President, one or more vice presidents, a Secretary and a Treasurer, and shall from time to time appoint such other officers as it may deem proper.

(b) The term of office of all officers shall be until their respective successors are chosen and qualified, but any officer may be removed from office at any time by ARAMARK without cause assigned.

(c) The President, vice president and the Treasurer of the Company, and each of them, are hereby delegated the power, authority and responsibility of the day-to-day management, administrative, financial and implementive acts of the Company's business, and each of them shall have the right and power to bind the Company and to make the final determination on questions relative to the usual and customary daily business decisions, affairs and acts of the Company.

Except as otherwise specifically provided in this Agreement, the officers shall have such duties as usually pertain to their offices except as modified by ARAMARK, and shall also have such powers and duties as may from time to time be conferred upon them by ARAMARK.

12. _Method of Giving Consent._ Any consent of a Member required by this Agreement may be given by a written consent.

13. _Dissolution_. The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act; or (iii) at any time there are no Members of the Company, unless the Company is continued in accordance with the Act or this Agreement.

(Signature page follows)

3

Case 1:22-cv-01228-JLT-EPG   Document 1   Filed 09/26/22   Page 44 of 64

**IN WITNESS WHEREOF,** the Member has hereunto set its hand as of the day and year first above written.

**ARAMARK Sports and Entertainment Group, LLC**
**Sole Member**

By    /s/ Alexander P. Marino

      Alexander P. Marino
      Vice President

# EXHIBIT I

LEGAL:05000-1476/12809858.1

EX-3.146 145 dex3146.htm LIMITED LIABILITY COMPANY AGT OF ARAMARK SPORTS & ENTERTAINMENT GROUP, LLC

**Exhibit 3.146**

**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**ARAMARK SPORTS AND ENTERTAINMENT GROUP, LLC**
A Delaware Limited Liability Company

THE UNDERSIGNED is executing this Limited Liability Company Agreement (the "Agreement") dated as of April 2, 2007 for the purpose of (i) effectuating the conversion (the "Conversion") of ARAMARK Sports and Entertainment Group, Inc., a Delaware corporation (the "Converted Corporation"), to a Delaware limited liability company (the "Company"), and (ii) adopting a limited liability company agreement for the governance of the business and affairs of the Company, each pursuant to the provisions of the Act (as defined below).

1. Name; Formation. The name of the Company shall be ARAMARK Sports and Entertainment Group, LLC, or such other name as the Member may from time to time hereafter designate. The Company constitutes a continuation of the existence of the Converted Corporation in the form of a Delaware limited liability company. In accordance with Section 18-214(b) of the Act, the Certificate of Conversion (converting the Converted Corporation to the Company) and the Certificate of Formation of the Company have been duly executed by a Member or other person designated by a Member or by any officer, agent or employee of the registered agent of the Company in the State of Delaware (any such person being an authorized person to take such action) and filed in the Office of the Secretary of State of the State of Delaware. As provided in Section 18-214(d) of the Act, the existence of the Company is deemed to have commenced on September 1, 1989, the date the Converted Corporation was originally organized under the laws of the State of Delaware.

2. Definitions. Whenever used in this Agreement the following terms shall have the meanings respectively assigned to them in this Section 2 unless otherwise expressly provided herein or unless the context otherwise requires:

Act. "Act" shall mean the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq., as amended from time to time.

Agreement. "Agreement" shall mean this Limited Liability Company Agreement of the Company as the same may be amended or restated from time to time in accordance with its terms.

Company: "Company" shall mean ARAMARK Sports and Entertainment Group, LLC, a Delaware limited liability company formed pursuant to the Act and this Agreement.

Member: "Member" shall mean ARAMARK Corporation and any person or entity hereafter admitted to the Company as a member of the Company as provided in this Agreement.

3. Business Purpose. The Company is organized for the purposes of engaging in any lawful act or activity for which limited liability companies may be organized under the Act.

4. Period of Duration. The term of the Company shall continue in perpetuity, unless the Company is earlier dissolved pursuant to law or the provisions of this Agreement.

5. *Foreign Qualification.* The Company shall perform such acts as may be necessary or appropriate to register the Company as a foreign limited liability company authorized to do business in such jurisdictions as the Company shall deem necessary or appropriate in connection with the business of the Company.

6. *Registered Agent and Registered Office.* The name and address of the registered agent for service of process on the Company in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801. The registered office of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801.

7. *Members.* Upon the effectiveness of the Conversion, ARAMARK Corporation, formerly known as ARAMARK Services, Inc., a Delaware Corporation and the sole stockholder of the Converted Company prior to conversion ("ARAMARK"), is admitted as the Sole Member of the Company. New Members of the Company may be admitted upon the written consent of ARAMARK.

8. *Capital Contribution.* The cash, property or services previously contributed by ARAMARK to the Converted Corporation, the identified and agreed value of which are recorded in the books and records of the Company, constitute the capital contribution of ARAMARK to the Company. ARAMARK shall have no obligation to make any further capital contributions to the Company. Persons or entities hereafter admitted as Members of the Company shall make such contributions of cash, property or services to the Company as shall be determined by ARAMARK at the time of each such admission.

9. *Management.* Except as otherwise specifically provided in this Agreement, ARAMARK shall have the authority to, and shall, conduct the affairs of the Company.

10. *Authorized Person.* Any officer of the Company is designated as an authorized person, within the meaning of the Act, to execute, deliver and file, or to cause the execution, delivery and filing of, all certificates (and any amendments and/or restatements thereof) required or permitted by the Act to be filed in the office of the Secretary of State of the State of Delaware and all acts committed in furtherance thereof are ratified.

11. *Officers.*

(a) ARAMARK shall appoint a President, one or more vice presidents, a Secretary and a Treasurer, and shall from time to time appoint such other officers as it may deem proper.

(b) The term of office of all officers shall be until their respective successors are chosen and qualified, but any officer may be removed from office at any time by ARAMARK without cause assigned.

(c) The President, vice president and the Treasurer of the Company, and each of them, are hereby delegated the power, authority and responsibility of the day-to-day management, administrative, financial and implementive acts of the Company's business, and each of them shall have the right and power to bind the Company and to make the final determination on questions relative to the usual and customary daily business decisions, affairs and acts of the Company.

2

Except as otherwise specifically provided in this Agreement, the officers shall have such duties as usually pertain to their offices except as modified by ARAMARK, and shall also have such powers and duties as may from time to time be conferred upon them by ARAMARK.

12. _Method of Giving Consent._ Any consent of a Member required by this Agreement may be given by a written consent.

13. _Dissolution_. The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act; or (iii) at any time there are no Members of the Company, unless the Company is continued in accordance with the Act or this Agreement.

(Signature page follows)

3

**IN WITNESS WHEREOF,** the Member has hereunto set its hand as of the day and year first above written.

**ARAMARK Corporation**
**Sole Member**

By    /s/ Michael J. O'Hara
          Michael O'Hara
          Vice President

4

# EXHIBIT J

LEGAL:05000-1476/12809858.1

Delaware.gov                                        Governor | General Assembly | Courts | Elected Officials | State Agencies



**Department of State: Division of Corporations**

<span style="text-align:right">Allowable Characters</span>

| HOME | |
|---|---|
|  | **Entity Details** |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 3408532 | Incorporation Date / Formation Date: | 6/28/2001 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | ARAMARK CORPORATION | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | THE CORPORATION TRUST COMPANY | | |
|---|---|---|---|
| Address: | CORPORATION TRUST CENTER 1209 ORANGE ST | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19801 |
| Phone: | 302-658-7581 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]                        [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

# Aramark Corp

## SEC CIK #0000757523

SEC.report (https://sec.report)  ›  CIK (https://sec.report/CIK)  ›
/  Aramark Corp (https://sec.report/CIK/0000757523)

**Aramark Corp** is a incorporated in the state of Delaware. Aramark Corp is primarely in the business of retail-eating places. For financial reporting, their fiscal year ends on September 27th. This page includes all SEC registration details as well as a list of all documents (S-1, Prospectus, Current Reports, 8-K, 10K, Annual Reports) filed by Aramark Corp.

## Company Details

| | |
|---|---|
| Reporting File Number | 001-08827 |
| State of Incorporation | DELAWARE |
| Fiscal Year End | 09-27 |
| Date of Edgar Filing Update | 2005-07-27 |
| SIC | 5812 [RETAIL-EATING PLACES] |
| Business Address | THE ARA TOWER<br>1101 MARKET ST<br>PHILADELPHIA PA 19107 |
| Business Phone | 2152383000 |
| Mailing Address | ARA GROUP INC<br>1101 MARKET STREET<br>PHILADELPHIA<br>PA<br>19107 |
| NCAGE Code  show more | 1TP18(https://cage.report/NCAGE/1TP18)<br>ARAMARK CORP<br>(https://cage.report/NCAGE/1TP18) |

Case 1:22-cv-01228-JLT-EPG   Document 1   Filed 09/26/22   Page 53 of 64

| CAGE Code [show more] | 0SNT1(https://cage.report/CAGE/0SNT1) ARAMARK CORPORATION (https://cage.report/CAGE/0SNT1) ARAMARK ARAMARK UNIFORM SERVICES | ARAMARK CORPORATION |
|---|---|---|
| DUNS [show more] | 125347968(https://cage.report/DUNS/125347968) | ARAMARK CORPORATION |
| SEC Alt | 0001144528(https://sec.report/CARAMARK CORP/DE IK/0001144528) | |

## —Documents

Email Notifications 📢   (/CIK/0000757523.rss)

| Form | Title | Date |
|---|---|---|
| SC 13G | Ownership Acquisition Statement (/Document/0000947871-16-000980/) | 2016-02-16 14:28:10 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-07-002192/) | 2007-02-14 17:01:03 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-07-002181/) | 2007-02-14 16:54:01 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-07-002153/) | 2007-02-14 16:06:49 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-07-002151/) | 2007-02-14 16:04:03 |
| 25-NSE | Delisting (/Document/0000876661-07-000118/) | 2007-01-30 13:58:15 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0001287726-06-000072/) | 2006-09-08 16:22:21 |
| SC 13G | Ownership Acquisition Statement (/Document/0000909518-06-000742/) | 2006-08-03 16:59:37 |
| SC 13D | Acquisition Statement (/Document/0000899140-06-000716/) | 2006-05-11 17:11:08 |
| 3 | Security Ownership Statement (/Document/0000899140-06-000715/) | 2006-05-11 17:10:31 |
| 3 | Security Ownership Statement (/Document/0001144204-06-019575/) | 2006-05-11 17:10:00 |
| SC 13D | Acquisition Statement (/Document/0001144204-06-019571/) | 2006-05-11 17:08:41 |
| 3 | Security Ownership Statement (/Document/0001144204-06-019567/) | 2006-05-11 17:06:44 |
| SC 13D | Acquisition Statement (/Document/0001144204-06-019561/) | 2006-05-11 17:04:19 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0001085059-06-000048/) | 2006-02-14 19:15:40 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0001085059-06-000047/) | 2006-02-14 19:15:17 |

| SC 13G | Ownership Acquisition Statement (/Document/0001287726-06-000007/) | 2006-02-03 17:22:18 |
| SC 13G | Ownership Acquisition Statement (/Document/0000950123-05-004268/) | 2005-04-08 17:10:46 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-05-004267/) | 2005-04-08 17:09:15 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-05-001764/) | 2005-02-14 14:35:18 |
| SC 13G | Ownership Acquisition Statement (/Document/0000912938-05-000100/) | 2005-02-01 14:17:12 |
| 15-12B | Notice of termination of registration of a class of securities under Section 12(b) (/Document/0001193125-05-000743/) | 2005-01-04 12:02:07 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-04-001822/) | 2004-02-17 06:05:09 |
| SC 13G | Ownership Acquisition Statement (/Document/0000912938-04-000132/) | 2004-02-11 07:00:55 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000732892-03-000012/) | 2003-02-14 18:06:44 |
| SC 13G | Ownership Acquisition Statement (/Document/0000898432-03-000228/) | 2003-02-13 14:39:25 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000315066-03-001362/) | 2003-02-13 12:38:17 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000950123-03-001266/) | 2003-02-12 14:29:23 |
| SC 13G | Ownership Acquisition Statement (/Document/0001169232-03-000448/) | 2003-01-27 16:17:13 |
| ARS | Annual Report (/Document/9999999997-03-000543/) | 2003-01-07 15:03:35 |
| SC 13G | Ownership Acquisition Statement (/Document/0000912938-02-000628/) | 2002-08-13 10:21:44 |
| SC 13G | Ownership Acquisition Statement (/Document/0000812295-02-000155/) | 2002-07-10 16:04:49 |
| SC 13G/A | Ownership Acquisition Statement [Amended] (/Document/0000315066-02-001690/) | 2002-05-10 09:00:38 |
| SC 13G | Ownership Acquisition Statement (/Document/0000732892-02-000010/) | 2002-02-15 00:00:00 |
| SC 13G | Ownership Acquisition Statement (/Document/0000315066-02-000414/) | 2002-02-13 00:00:00 |
| SC 13G | Ownership Acquisition Statement (/Document/0000912057-02-005295/) | 2002-02-12 00:00:00 |
| S-8 POS | Employee Benefit Plan Security Offering (/Document/0000950130-01-506099/) | 2001-12-17 00:00:00 |
| 8-K | Current Report (/Document/0000928385-01-502748/) | 2001-12-10 00:00:00 |
| SC 13G | Ownership Acquisition Statement (/Document/0000950116-01-501223/) | 2001-12-03 00:00:00 |
| 425 | Merger Prospectus/Communication (/Document/0001032210-01-501434/) | 2001-11-30 00:00:00 |
| 10-K405 | Annual Report S-K Item 405 (/Document/0000928385-01-502627/) | 2001-11-29 00:00:00 |
| 425 | Merger Prospectus/Communication (/Document/0000950130-01-505569/) | 2001-11-21 00:00:00 |

Case 1:22-cv-01228-JLT-EPG   Document 1   Filed 09/26/22   Page 55 of 64

| 425 | Merger Prospectus/Communication (/Document/0000950130-01-505574/) | 2001-11-21 00:00:00 |
| 425 | Merger Prospectus/Communication (/Document/0000950130-01-505574/) | 2001-11-21 00:00:00 |
| 425 | Merger Prospectus/Communication (/Document/0000950130-01-505537/) | 2001-11-20 00:00:00 |
| 425 | Merger Prospectus/Communication (/Document/0000950130-01-504395/) | 2001-09-06 00:00:00 |
| 425 | Merger Prospectus/Communication (/Document/0000950130-01-504396/) | 2001-09-06 00:00:00 |
| 10-Q | Quarterly Report (/Document/0000950116-01-500634/) | 2001-08-13 00:00:00 |
| SC 13D/A | Acquisition Statement [Amended] (/Document/0001021408-01-504542/) | 2001-08-06 00:00:00 |
| 425 | Merger Prospectus/Communication (/Document/0000950109-01-502191/) | 2001-07-17 00:00:00 |

[ 2 ] Next-> (/CIK/0000757523/2#documents)

0-50 of 249 Results

Page: **1** | 2 (/CIK/0000757523/2#documents) | 3 (/CIK/0000757523/3#documents) | 4 (/CIK/0000757523/4#documents) | 5 (/CIK/0000757523/5#documents) |

## U.S. Import Records [external site] ☐ (https://import.report/company/Aramark-Corp)

| Import ID | Shipment | Cargo Description | Quantity |
|---|---|---|---|
| 2018031013103 (https://import.report/record/2018031013103) | Yantian,China (Mainland) -> Houston, Texas | LASER CUTTING MACHINE CMA1814C-F 1SETS LASER CUTTING MACHINE CMA1625-F 2SETS | 13 PKG |

## Related SEC Filings - Aramark 🔍 (/CIK/Search/Aramark)

| Aramark of DELAWARE (/CIK/0001584509) | 0001584509 (/CIK/0001584509) |
|---|---|
| Aramark International Finance S.a r.l. of LUXEMBOURG (/CIK/0001714302) | 0001714302 (/CIK/0001714302) |
| Aramark Japan, LLC of DELAWARE (/CIK/0001397021) | 0001397021 (/CIK/0001397021) |
| Aramark Organizational Services, LLC of DELAWARE (/CIK/0001397015) | 0001397015 (/CIK/0001397015) |
| Aramark Senior Notes Company, LLC of DELAWARE (/CIK/0001397010) | 0001397010 (/CIK/0001397010) |
| Aramark Trademark Services, Inc. of DELAWARE (/CIK/0001396759) | 0001396759 (/CIK/0001396759) |

| | |
|---|---|
| Aramark Global, Inc. (/CIK/0001691518) | 0001691518 (/CIK/0001691518) |
| Aramark Refreshment Group, Inc. (/CIK/0001594188) | 0001594188 (/CIK/0001594188) |
| Aramark Facility Services, LLC of DELAWARE (/CIK/0001396654) | 0001396654 (/CIK/0001396654) |
| Aramark Educational Services of Texas, LLC of TEXAS (/CIK/0001397358) | 0001397358 (/CIK/0001397358) |
| ARAMARK Industrial Services, LLC of DELAWARE (/CIK/0001396657) | 0001396657 (/CIK/0001396657) |
| Aramark Business Dining Services of Texas, LLC of TEXAS (/CIK/0001397356) | 0001397356 (/CIK/0001397356) |
| Aramark CTS, LLC of DELAWARE (/CIK/0001396651) | 0001396651 (/CIK/0001396651) |
| Aramark Food Service of Texas, LLC of TEXAS (/CIK/0001397359) | 0001397359 (/CIK/0001397359) |
| Aramark Healthcare Support Services of Texas, Inc. of TEXAS (/CIK/0001397360) | 0001397360 (/CIK/0001397360) |
| Aramark Healthcare Technologies, LLC of DELAWARE (/CIK/0001396653) | 0001396653 (/CIK/0001396653) |
| Aramark Management Services Limited Partnership of DELAWARE (/CIK/0001396658) | 0001396658 (/CIK/0001396658) |
| Aramark Senior Living Services, LLC of DELAWARE (/CIK/0001396659) | 0001396659 (/CIK/0001396659) |
| Aramark SM Management Services, Inc. of DELAWARE (/CIK/0001396660) | 0001396660 (/CIK/0001396660) |
| Aramark SMMS LLC of DELAWARE (/CIK/0001396661) | 0001396661 (/CIK/0001396661) |
| Aramark Sports & Entertainment Services of Texas, LLC of TEXAS (/CIK/0001397361) | 0001397361 (/CIK/0001397361) |
| Aramark Aviation Services Limited Partnership of DELAWARE (/CIK/0001397355) | 0001397355 (/CIK/0001397355) |
| Aramark Services, Inc. of DELAWARE (/CIK/0000007032) | 0000007032 (/CIK/0000007032) |
| ARAMARK Business & Industry, LLC of DELAWARE (/CIK/0001451920) | 0001451920 (/CIK/0001451920) |

🔍 conduct a search (/CIK/Search/Aramark) for additional similar companies

© 2022 SEC.report | Contact (https://sec.report/contact.php) | 🅞 (https://www.reddit.com/search/?
q=site%3Asec.report) | 🐦 (https://twitter.com/EdgarInsider)

Data is automatically aggregated and provided "as is" without any representations or warranties, express or implied.
SEC.report is not affiliated with the U.S. S.E.C. or EDGAR System. Disclosure & Privacy Policy
(https://sec.report/privacy_policy.php)
SEC CFR Title 17 of the Code of Federal Regulations. (https://ecfr.io/Title-17/)

# EXHIBIT K

LEGAL:05000-1476/12809858.1

1286        FIFTY-EIGHTH CONGRESS.  Sess. III.  Res. 29–32.  1905.

March 3, 1905.
[S. J. R. 109.]
[Pub. Res., No. 28.]

Eighth International
Geographic Congress.
Report of, ordered
printed.
Distribution.

[No. 29.]   Joint Resolution To print the report of the Eighth International Geographic Congress.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Public Printer be authorized and directed to print the report of the Eighth International Geographic Congress, held in the United States in September, nineteen hundred and four, the edition to consist of the usual number for the use of the Senate and House of Representatives and one thousand five hundred copies to be bound for the use of the Eighth International Geographic Congress.

Approved, March 3, 1905

March 3, 1905.
[S. J. R. 115.]
[Pub. Res., No. 29.]

Yosemite National
Park.
Appropriation for
improvement, etc., of.

[No. 30.]   Joint Resolution Accepting the recession by the State of California of the Yosemite Valley Grant and the Mariposa Big Tree Grove in the Yosemite National Park.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That there is hereby appropriated from any moneys in the Treasury, not otherwise appropriated, for the management, protection, and improvement of the Yosemite National Park, to be expended under the supervision of the Secretary of the Interior, the sum of twenty thousand dollars.

Approved, March 3, 1905.

March 3, 1905.
[S. J. R. 116.]
[Pub. Res., No. 30.]

Inaugural ceremo-
nies.
Appropriation for
expenses of.

*Ante,* p. 1280.

[No. 31.]   Joint Resolution To enable the Secretary of the Senate and Clerk of the House of Representatives to pay the necessary expenses of the inaugural ceremonies of the President of the United States March fourth, nineteen hundred and five.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That to enable the Secretary of the Senate and the Clerk of the House of Representatives to pay the necessary expenses of the inaugural ceremonies of the President of the United States March the fourth, nineteen hundred and five, in accordance with such program as may be adopted by the joint committee of the Senate and House of Representatives, appointed under a concurrent resolution of the two houses, including the pay for extra police three days, at three dollars per day, there is hereby appropriated out of any moneys in the Treasury not otherwise appropriated two thousand dollars, or so much thereof as may be necessary, in addition to the sum appropriated by the joint resolution approved January thirty-first, nineteen hundred and five, the same to be immediately available.

Approved, March 3, 1905.

March 3, 1905.
[H. J. R. 222.]
[Pub. Res., No. 31.]

Ying Hsing Wen and
Ting Chia Chen, of
China.
Admitted to West
Point.
*Provisos.*
No expense.

[No. 32.]   Joint Resolution Permitting Ying Hsing Wen and Ting Chia Chen, of China, to receive instruction at the Military Academy at West Point.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of War be, and he hereby is, authorized to permit Ying Hsing Wen and Ting Chia Chen, of China, to receive instruction at the Military Academy at West Point: *Provided,* That no expense shall be caused to the United States thereby; and that the said Ying Hsing Wen and Ting Chia Chen shall agree to comply fully with all regulations for the

 **National Park Service**

# Yosemite   National Park
California

---

ALERTS IN EFFECT                                             DISMISS 

PARK CLOSURES

## A reservation is required to drive into or through Yosemite during peak hours

A reservation is required to drive into or through Yosemite National Park from 6 am to 4 pm daily. If you are planning to arrive after 4 pm, please do not arrive at a park entrance station until after 4 pm. Vehicles blocking roads will be cited.

**more**

---

## Glacier Point Road is closed

The entire Glacier Point Road is closed in 2022. The only access to Glacier Point, Sentinel Dome, Taft Point, and other Glacier Point Road destinations is via a long, strenuous hike. No water or toilets are available at Glacier Point.

**more**

---

**+    1 more non-emergency alert notifications...**

---

**Dismiss     View all alerts**

*NPS.gov / Park Home / Learn About the Park / Management / Laws & Policies / Enabling Legislation*

# Enabling Legislation

**1864**

U.S. Statutes at Large, Vol. 13, Chap. 184, p. 325. **"An Act authorizing a Grant to the State of California of the Yo-Semite Valley,' and of the Land embracing the Mariposa Big Tree Grove.'"** [S. 203; Public Act No. 159]

**1890**

U.S. Statutes at Large, Vol. 26, Chap. 1263, pp. 650-52. **"An act to set apart certain tracts of land in the State of California as forest reservations."** [H.R. 12187]

**Other Legislation**

**1892**

U.S. Statutes at Large, Vol. 27, Chap. 205, pp. 235-36. **"An act granting to the County of Mariposa, in the State of California, the right of way for a free wagon road or turnpike across the Yosemite National Park, in the said state."**

**1901**

U.S. Statutes at Large, Vol. 31, Chap. 372, pp. 790-91. **"An Act Relating to rights of way through certain parks, reservations, and other public lands."** [H.R. 11973]

**1905**

Statutes of California (1905, p.54) **"Act of the Legislature of the State of California, Approved March 3, 1905, Regranting to the United States of America the Yosemite Valley and the land embracing the 'Mariposa Big Tree Grove'"**

U.S. Statutes at Large, Vol. 33, Part 1, Chap. 547, pp. 702-703. **"An Act To exclude from the Yosemite National Park, California, certain lands therein described, and to attach and include the said lands in the Sierra Forest Reserve."** H.R. 17345; Public Act No. 49

**1906**

U.S., Statutes at Large, Vol. 33, Part 1, Resolution No. 30, p. 1286. **"Joint Resolution Accepting the recession by the State of California of the Yosemite Valley Grant and the Mariposa Big Tree Grove in the Yosemite National Park."** S.J.R. 115; Public Resolution No. 29

U.S. Statutes at Large, Vol. 34, Part 1, Resolution No. 27, pp. 831-32. **"Joint Resolution Accepting the recession by the State of California of the Yosemite Valley Grant and the Mariposa Big Tree Grove, and including the same, together with fractional sections five and six, township five south, range twenty-two east, Mount Diablo meridian, California, within the metes and bounds of the Yosemite National Park, and changing the boundaries thereof."** H.J.R. 118; Public Resolution No. 27

**1912**

U.S. Statutes at Large, Vol. 37, Part 1, Chap. 74, pp. 80-81. **"An Act To authorize the Secretary of the Interior to secure for the United States title to patented lands in the Yosemite National Park, and for other purposes."** S. 5718; Public Act No. 117

**1913**

U.S. Statutes at Large, Vol. 38, Part 1, Chap. 4, pp. 242-51. **"An Act Granting to the city and county of San Francisco certain rights of way in, over, and through certain public lands, the Yosemite National Park, and Stanislaus National Forest, and certain lands in the Yosemite National Park, the Stanislaus National Forest, and the public lands in the State of California, and for other purposes."** H.R. 7207; Public Act No. 41

U.S. Statutes at Large, Vol. 38, Chap. 58, pp. 345. "An Act To amend section one of an Act of Congress approved April ninth, nineteen hundred and twelve (Thirty-seventh Statutes, page eighty), entitled 'An Act to authorize the Secretary of the Interior to secure for the United States title to patented lands in the Yosemite National Park, and for other purposes.'"

U.S. Statutes at Large, Vol. 38, Part 1, Chap. 88, pp. 376-77. **"An Act To consolidate certain forest lands in the Sierra National Forest, and Yosemite National Park, California."** H.R. 13770; Public Act No. 99

**1914**

U.S. Statutes at Large, Vol. 38, Part 1, Chap. 206, pp. 554-55. **"An Act To amend an Act approved October first, eighteen hundred and ninety, entitled An Act to set apart certain tracts of land in the State of California as forest reservations.'"** H.R. 1694; Public Act No. 148

**1919**

Statutes and Amendments to codes of California 1919, p. 74. "Act of Legislature of California Approved April 15, 1919, ceding to the United States of America, exclusive jurisdiction over Yosemite National Park in the State of California."

**1920**

U.S. Statutes at Large, Vol. 41, Part 1, Chap. 218, pp. 731-34. **"An Act To accept the cession by the State of California of exclusive jurisdiction over the lands embraced within the Yosemite National Park, Sequoia National Park, and General Grant National Park, respectively, and for other purposes."** S. 12044; Public Act No. 235

**1928**

U.S. Statutes at Large, Vol. 45, pp. 787. "An Act To authorize the acquisition of certain patented land adjoining the Yosemite National Park boundary by exchange, and for other purposes." (P.L. 70-558, 45 Stat. 787)

**1929**

U.S. Statutes at Large, Vol. 45, pp. 1486. "An Act to provide for the preservation and consolidation of certain timber stands along the western boundary of the Yosemite National Park, and for other purposes."

**1930**

"Enlarging the Park: Proclamation (No. 1904) of April 14, 1930

U.S. Statutes at Large, Vol. 46, pp. 265. "An Act To provide for the addition of certain lands to the Yosemite National Park, California, and for other purposes." (P.L. 71-187)

**1931**

Act of February 14, 1931 (P.L. 71-666, 46 Stat. 1154), authorized acquisition with appropriated funds.

**1932**

Enlarging the Park: Proclamation (No. 2005) of August 13, 1932

**1937**

U.S. Statutes at Large, Vol. 50, pp. 485. "An Act To provide for the acquisition of certain lands for, and the addition thereof to, the Yosemite National Park, in the State of California, and for other purposes." (P.L. 75-195)

**1958**

U.S. Statutes at Large, Vol. 72, pp. 1772. "An Act To authorize the Secretary of the Interior to provide an administrative site for Yosemite National Park, California, on lands adjacent to the park, and for other purposes."

**1968**

U.S. Statutes at Large, Vol. 82, pp. 393. "An Act To authorize the Secretary of the Interior to grant long-term leases with respect to lands in the El Portal administrative site adjacent to Yosemite National Park, California, and for other purposes."

**1984**

U.S. Statutes at Large, Vol. 98, pp. 1627. **"California Wilderness Act."**

**1986**

U.S. Statutes at Large, Vol. 100, pp. 3037. (P.L. 99-542) authorized additional long-term leases in the El Portal administrative site.

**1987**

U.S. Statutes at Large, Vol. 101, pp. 879. **"An Act To amend the Wild and Scenic Rivers Act by designating a segment of the Merced River in California as a component of the National Wild and Scenic Rivers System."**

**1998**

Act of November 10, 1998 (P.L. 105-363, 112 Stat. 3298) authorized the Secretary of the Interior to convey to a private individual approximately 8 acres within the El Portal Administrative Site, in exchange for 8 acres of land adjacent to the El Portal Administrative Site.

**2013**

Federal Register, Vol. 78, No. 142, pp. 44596.**"Minor Boundary Revision at Yosemite National Park"**

Last updated: March 1, 2015



## Was this page helpful?

Yes

No

An official form of the United States government. Provided by **Touchpoints**

CONTACT INFO

**Phone:**

209/372-0200

STAY CONNECTED